**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| CLARA SEAMANDS, et al. | ) | |
| | ) | **Case No. 09-cv-02054-JWL-KGS** |
| **Plaintiffs** | ) | |
| v. | ) | |
| | ) | |
| SEARS HOLDINGS CORPORATION, et al. | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS'**
**FEES, EXPENSES, AND CLASS REPRESENTATIVES' INCENTIVE AWARDS**

# EXHIBIT 3

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CLARA SEAMANDS, et al. | ) | |
| | ) | **Case No. 09-cv-02054-JWL-KGS** |
| **Plaintiffs** | ) | |
| v. | ) | |
| | ) | |
| SEARS HOLDINGS CORPORATION, et al. | ) | |
| | ) | |
| **Defendants.** | ) | |

## DECLARATION OF JOSEPH A. KRONAWITTER

I, Joseph A. Kronawitter, declare as follows:

1.      I am an attorney licensed in the State of Kansas and Missouri, and counsel for Plaintiffs in the above-captioned case.

2.      In late July, 2009, I had several email exchanges with Sears' counsel, Chris Pace, regarding some framework to attempt resolution of this case.  In essence, during these discussions Sears suggested that the parties stay formal discovery while Sears provided informal discovery.  That was the only "offer" Sears made in July, 2009. Sears never made an actual settlement offer in this case until the parties mediated the case in November, 2009.

3.      Sears' July, 2009 suggestion was unworkable for several reasons.  At that time, Plaintiffs' counsel had no basis to believe that Sears' efforts were sincere, or that Sears would be forthcoming during the informal discovery process.  That hesitancy by Plaintiffs' counsel was based on the following:

- Sears had maintained from the outset that the Class was owed nothing and that it had properly paid all commissions due;

- Sears had objected to virtually every discovery request and provided no substantive responses;

- Sears had produced few documents, and those primarily related to just the named

  Plaintiffs in not Sears' class wide systems;

- Sears had produced no witnesses for deposition;

- Sears had violated the Court's Scheduling Order by refusing to submit its own

  good-faith proposal to settle the case in response to Plaintiffs' June, 2009

  settlement demand;

- Sears' defense had been overly aggressive, such as:

  o arguing that one of Plaintiffs' motions was filed one minute out of time
    (which was incorrect);

  o filing a motion that was patently improper under Fed.R.Civ.P. 12, and

  o objecting to Plaintiffs' use of the word "all" in discovery requests while
    Sears used the exact same term in its own discovery requests.

4.      Given these facts, Plaintiffs' Counsel questioned the wisdom of suspending their

right to engage in formal discovery and simply rely on what Sears would offer through an

informal discovery.

5.      Consequently, Class Counsel were forced to push forward with limited discovery.

6.      On September 22, 2009, I attended the deposition of Barb Waite in Chicago,

Illinois, along with my co-counsel Bob Horn.  After Ms. Waite's deposition, Mr. Horn and I

had a discussion with Sears' counsel Chris Pace while standing outside of the building where

Ms. Waite's deposition was conducted.  During that discussion, Mr. Pace acknowledge that

Ms. Waite's testimony indicated that Sears owed money to Outlet store employees and that

Plaintiffs were "barking up the right tree."  Mr. Horn, Mr. Pace and I continued our

settlement discussion during the subsequent ride to the airport for our return flights.  During

that ride, the three of us discussed the idea of suspending all future deadlines while we

scheduled mediation in the near term.  During that discussion, Mr. Pace stated his belief that Sears might be agreeable to settling on an Outlet store basis and that it understood it would "have to pay a fee."

7.      Subsequent to September 22, 2009, the parties agreed to jointly move the Court to stay deadlines pending the parties' mediation scheduled for November 2, 2009, with mediator Larry Rute.

8.      On October 26, 2009, I received an email from Mr. Pace requesting the Plaintiffs' Counsel's collective lodestar so he could "properly obtain authority" prior to the mediation.

9.      During the mediation held November 2, 2009 with mediator Larry Rute, at no point did Sears indicate that it was taking the position that Class Counsel were entitled to no fee.

10.     Subsequent to November 2, 2009, the parties had sporadic further negotiations about an agreed attorney's fee, but were unable to resolve the issue.  During those discussions, Mr. Pace indicated that his client would be willing to pay a fee, but not in excess of $100,000.

11.     Prior to June 10, 2010, I engaged in discussions and email exchanges with Mr. Pace regarding the details of the parties' Settlement Agreement, the Class Notice, the Claim forms and other details of the overall settlement.  Those discussions included specific email exchanges related to the wording of the attorney fee paragraph in the Settlement Agreement. During those exchanges, Mr. Pace never indicated that Sears' position was that no fee was due.  During those exchanges, it was my understanding that the language of the attorney fee provision in the Settlement Agreement indicated Sears' assent that Class Counsel could ask the Court for a fee, and that Sears' only dispute was with the size of the fee.  That

4

understanding was in line with the parties' prior negotiations where Sears indicated its willingness to pay an attorney fee, but not a fee commensurate with Class Counsel's work in this case.

12.     In a final effort to resolve the attorney fee issue, I initiated further discussions with Sears shortly before the filing of Plaintiffs' Motion for Attorneys' Fees.  On August 9, 2010, I had a telephone conversation with Sears' counsel Sarah Anthony regarding the possibility of re-starting attorney fee negotiations.  Over the next few days I corresponded by e-mail with Mr. Pace regarding the attorney fee issue, culminating in a telephone conversation on Friday, August 13, 2010 where the parties discussed the possibility of resolving the attorney fee issue for an agreed amount, but without success.

13.     Shortly after Plaintiffs' Motion for Attorneys' Fees was filed, Mr. Horn and I had a telephone conversation with Mr. Pace where he indicated that Plaintiffs' fee motion had "galvanized" his client and that its attorney fee offer had now been reduced to $36,000.  We declined Mr. Pace's offer and stated that we would let the Court decide the issue.

14.     Prior to the filing of Sears' Response on September 3rd, it was Class Counsel's understanding that Sears only disputed the size of the requested attorney fee, not whether a fee was due Class Counsel for their work in this case.

15.     The fee billing attached to Plaintiffs' Reply brief as Exhibit 18 are contemporaneous and detailed time entries reflecting time expended by Class Counsel subsequent to July 23, 2010, including time necessitated by the arguments set forth in Sears' Response to Plaintiffs' Motion for Attorneys' Fees.

16.     I anticipate that Class Counsel will expend an additional ten to fifteen hours of attorney time necessary to see this matter through to conclusion, including preparation of the

final order and judgment, preparing for and attending the October 4, 2010 fairness hearing
and final interactions with the settlement administrator.

The foregoing facts are true and accurate to the best of my knowledge and belief.

Executed this 22nd day of September, 2010 in Kansas City, Missouri.


                                            __/s/ Joseph A. Kronawitter_____
                                            Joseph A. Kronawitter