**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

CLARA SEAMANDS, *et al.*,　　　　　　)
　　　　　　　Plaintiffs,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　) Case No. 09-cv-02054-JWL-KGS
　　　　　　　　　　　　　　　　　　　　)
SEARS HOLDINGS CORPORATION *et al.*,　)
　　　　　　　Defendants.　　　　　　　　)

**UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

COME NOW Plaintiffs Clara Seamands, Ronald Lockhart, Glenn Burrows, and Dana

McDonald (hereinafter collectively referred to as the "Class Plaintiffs"), and move the Court for

an order granting final approval to the Settlement with Defendants Sears Holdings Corporation,

Sears, Roebuck and Co., Sears Outlet Stores, LLC and Sears Holdings Management Corporation

(hereinafter collectively referred to as "Sears" or "Defendants"), in accordance with the

Settlement Agreement previously filed with the Court.  In further support, Class Plaintiffs state

as follows:

**I.　　OVERVIEW OF SETTLEMENT**

This Settlement resolves claims of the Class relating to underpayment of earned wages

and commissions, including claims for unjust enrichment, breach of contract and violations of

the wage payment laws set forth on Exhibits A and B to Plaintiffs' Complaint.[1]  The Settlement

satisfies the necessary requirements of Federal Rule of Civil Procedure 23, and meets the

fairness factors articulated by the Tenth Circuit Court of Appeals.[2]  The fairness of the

Settlement is evident from the reaction of the Class, both in terms of objections[3] and opt-outs,[4]

---

[1]  Such as the Missouri Merchandising Practices Act, R.S.Mo. § 407.913. *See* Second Amended Complaint, Doc. #89.
[2]  *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002).

and the reaction from state officials.[5]  The Settlement benefits are determinable, and will yield

substantial benefit to Class Members.  Final approval of the Settlement is appropriate and

warranted.

## II.   APPLICABLE LEGAL STANDARDS

   A.   *Settlement In General*

   When a settlement is reached by experienced counsel after negotiations in an adversarial

setting, there is an initial presumption that the settlement is fair and reasonable.[6]  Indeed,

counsels' judgment as to the fairness of the agreement is entitled to "substantial weight"[7] and the

court "should not substitute its business judgment for that of counsel absent evidence of fraud or

overreaching."[8]

   Settlement is a favored method for resolving disputes,[9] and this Court's decision to

approve the Settlement should be influenced by the strong federal policy of encouraging

settlement of civil litigation.[10]  This policy is no less true in class actions.[11]  In fact, settlement is

especially favored in class actions because it minimizes litigation expenses and reduces the strain

---

[3]  Of the 857 Class members who received direct notice of this Settlement, there were no objections. *See* Declaration of Jonathan Paul, Senior Project Administrator with Rust Consulting ("Paul Dec."), attached hereto as Exhibit A, pg. 3.

[4]  There was 1 opt-out, which equates to a .12% opt-out rate. *Id.*

[5]  *See* Section III(D) below.

[6]  *Marcus v. State of Kansas, Dept. of Revenue*, 209 F. Supp.2d 1179, 1182 (D. Kan. 2002).  *See also Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) ("[A]bsent evidence of fraud or overreaching, courts consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel.").

[7]  *Law v. Nat'l Collegiate Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000).

[8]  *Seiffer v. Topsy's Int'l, Inc.*, 70 F.R.D. 622, 626 (D. Kan. 1976).

[9]  *See TGB, Inc. v. Bendis*, 36 F.3d 916, 923-924 (10th Cir. 1994) (noting that "federal policy generally encourages settlement").

[10]  *See Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1186 (10th Cir. 1972); *see also Sears v. Atchison, Topeka, Santa Fe R.R. Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984), *cert. denied*, 471 U.S. 1099 (1985).

[11]  *See, e.g., Williams Foods, Inc. v. Eastman Chem. Co.*, No. 99C16680, 2001 WL 1298887, at *2 (D. Kan. Aug. 8, 2001) (applying Rule 23 class action principles to a state class action and noting that "[s]ettlement is especially favored in class actions because it minimizes litigation expenses of all parties and reduces strain on judicial resources."); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("federal courts naturally favor the settlement of class action litigation").

on judicial resources.[12]  The federal courts have addressed the relationship between the policy in

favor of class-action settlements and the scope of judicial inquiry:

> Voluntary out of court settlement of disputes is highly favored in the law…The
> court will not, therefore, substitute its own judgment for the good faith
> negotiations of experienced counsel …. The Court should not turn the settlement
> hearing into a trial on the merits….Thus, the trial court has a limited scope of
> review for determining fairness.  The very purpose of settlement is to avoid trial
> of sharply disputed issues and the cost of protracted litigation…The Court may
> limit its fairness proceeding to whatever is necessary to aid it in reaching a just
> and informed decision….An evidentiary hearing is not required.[13]

This Court is well aware of the inherent value in amicably resolving litigation.  The Court

has consistently encouraged some form of alternative dispute resolution, and ordered the parties

to exchange settlement offers.[14]  This Settlement resulted from earnest, reasoned negotiations

contemplated by the Court in these prior orders.

>    B.    *Class Settlement Approval*

Approval of a class action settlement involves a two-stage process. First, the court

makes a preliminary fairness evaluation of the proposed settlement.[15] If the court is satisfied as

to the certifiability of the class and the results of its initial inquiry into the fairness,

reasonableness, and adequacy of the settlement, the court will direct that notice be given to the

class of a formal fairness hearing alerting class members of their rights to express their views

on the settlement.[16]

---

[12]  *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding
public interest in favor of settlement."); *In re Dept. Of Energy Stripper Well Exemption Lit.*, 653 F. Supp. 108, 115
(D. Kan. 1986) ("It is in the interests of the courts and the parties that there should be an end to litigation and the law
favors the peaceful settlement of controversies.").

[13]  *In re Agent Orange Product Liability Litigation,* 597 F. Supp. 740, 758-760 (E.D.N.Y 1985), *aff'd*., 818 F.2d 226
(2nd Cir. 1987); *Bowling v. Prizer, Inc.,* 143 F.R.D. 141 (S.D.Ohio 1992); *Cotton,* 559 F.2d at 1330-32.

[14]  *See* Scheduling Order, Doc. #15, at 3.

[15]  *See* FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION § 21.632, at 320 (4th ed. 2004).

[16]  *Id.* § 21.633, at 321-322; *see also Marcus,* 209 F. Supp. 2d at 1181.

The first step has been completed in this case. The Court granted preliminary approval on June 24, 2010, and direct mail notice was sent to the Class.[17]

At the second stage, pursuant to Federal Rule of Civil Procedure 23(e), the court may approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class, and may approve a settlement, voluntary dismissal, or compromise that would bind class members after a hearing and on finding that the settlement meets the requisite requirements of Rule 23(a)(b) and (e).

Pursuant to Federal Rule of Civil Procedure 23(e)(2), a class action settlement must also be "fair, reasonable, and adequate."[18] The Tenth Circuit has outlined four factors that must be considered in assessing whether a proposed class settlement is fair, reasonable and adequate:

(1)     whether the proposed settlement was fairly and honestly negotiated;
(2)     whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3)     whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4)     the judgment of the parties that the settlement is fair and reasonable.[19]

## III.   LEGAL ANALYSIS AND ARGUMENT

### A.     APPLICATION OF RULE 23(A) AND (B)

#### 1.   Numerosity

Certification is proper where the putative class is so numerous that joinder is "impracticable."[20]   There is no set formula to determine if the class is so numerous that it should be certified; rather, the determination is made on a case-by-case basis.[21]   The number of class

---

[17]  Paul Dec., Exhibit A, pg. 2.
[18]  *Jones v. Nuclear Pharmacy, Inc*., 741 F.2d 322, 324 (10th Cir. 1984); *see also, Gottlieb v. Wiles*, 11 F.3d 1004 (10th Cir. 1993).
[19]  *Rutter*, 314 F.3d at 1188; *Gottlieb,* 11 F.3d at 1014; *Epstein v. Wittig,* No. 03-4081, 2005 WL 3276390, at *6 (D. Kan. Dec. 2, 2005).
[20]  FED. R. CIV. P. 23(a)(1); *Sibley v. Sprint Nextel Corp*., 254 F.R.D. 662, 671-72 (D. Kan. 2008).
[21]  *Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978) (*cited in Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006)).

members involved may be established by evidence that provides some ascertainable number or otherwise by reasonable estimate.[22]

There are approximately 857 Class Members.[23]  Numerosity is present.

### 2.  Commonality

Rule 23(a)(2) requires only a single question of law or fact that is common to the class.[24] It is irrelevant that the amount of damages among individual class members may differ, because it is the action and policies of Defendants with respect to the class as a whole that are challenged.[25]  The "commonality" requirement of Rule 23(a) is a low bar, and courts have generally given it a "permissive application."[26]

Sears operates numerous retail "outlet" stores around the country that sell items ranging from clothing to kitchen appliances.  Class Members are certain current and former employees at these stores.  Class Plaintiffs brought this lawsuit to cure an alleged failure to pay all amounts due Class Members for incentive compensation in connection with the sale of certain covered items ("Covered Items") sold at Defendants' outlet stores between June 1, 2007 and August 31, 2008.  Sears' conduct was uniform and gives rise to the claims of Class Plaintiffs and the Class Members.  Commonality is established.

### 3.  Typicality

The typicality requirement does not mandate that the claims of the representative plaintiffs be identical to those of the other class members.[27]  Rather, the Court should look to see if the claims of the representative plaintiffs are "significantly antagonistic" to the claims of the

---

[22] *Rex*, 585 F.2d at 436.
[23] Paul Dec., Exhibit A, pg. 2.
[24] *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999).
[25] *Olenhouse v. Commodity Credit Corp,.*136 F.R.D. 672, 680 (D. Kan. 1991) (citing *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988)).
[26] 7A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1763, at 221 (3rd ed. 2005).
[27] *Olenhouse*, 136 F.R.D. at 680.

proposed class.[28]  Like commonality, typicality results directly from the nature of plaintiffs' claims.[29]  Thus, a representative plaintiff's claim may differ factually from the claims of the class and still be typical if the claim arises from the same practice or course of conduct and is based on the same legal theory.[30]

Class Plaintiffs allege that Sears failed to pay commissions that were owed.  Class Plaintiffs and Class Members were thus subjected to the same treatment by Sears during the same type of transaction, resulting in the same type of harm.  Cleary, the claims of the Class Plaintiffs and the claims of the Class Members are typical.  In addition, the claims of the Class Plaintiffs are not "significantly antagonistic" to the Class.  On the contrary, the interests of the Class Plaintiffs and Class members are uniform in that, all have an incentive to obtain compensation that is due.  Typicality is present.

    4. <u>Adequacy Of Representation</u>

There are two elements to the adequacy of representation inquiry: 1) whether conflict exists among class members with respect to their interests and 2) whether counsel is qualified to conduct the litigation as a class.[31]

With this Settlement, Sears has agreed to pay the Class for incentive payments that were not paid by Sears between June, 2007 and August, 2008.  There has been no alleged conflict between Class Members because no conflict exists.  Further, a mere allegation of conflict is insufficient; as other Courts in this District have previously noted, mere speculative allegations of antagonism do not defeat a finding of typicality.[32]

---

[28]  *Id.*; *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995).
[29]  *Sibley,* 254 F.R.D. at 674.
[30]  *Zapata v. IBP, Inc.,* 167 F.R.D. 147, 160 (D. Kan. 1996); *see also* WILLIAM RUBENSTEIN, ET AL., NEWBERG ON CLASS ACTIONS § 18:9 (4th ed. 2002) ("[T]ypicality refers to the nature of the claim or defense, and not to the specific facts from which it arose or the relief sought.").
[31]  *Sibley,* 254 F.R.D. at 674; *Rutter,* 314 F.3d at 1187-88; *Olenhouse*, 136 F.R.D. at 680.
[32]  *See In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. at 614, n.2.

As to Class Counsel, this Court presumably accepted the qualifications of the undersigned Plaintiffs' counsel when it appointed them as Class Counsel for the settlement class.[33]

     5.    <u>Predominance</u>

Predominance and manageability overlap because, if issues unique to individual class members predominate over common issues, a trial could involve individualized class member inquiry.[34]  However, manageability is a *trial* criterion that is *irrelevant* when a class is certified for settlement purposes:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.[35]

Thus, Class Plaintiffs are not required to prove the elements of their claims and the claims held by the Class, because the Settlement nullifies that requirement.  So, as with the manageability factor with which it is intertwined, the predominance requirement does not require or involve any individualized proof in a class certified for settlement purposes only.

Because the claims do not have to be <u>proven</u> on a class wide basis, the predominant issues for settlement are the common questions and issues set forth above: did Sears underpay the Class; was the Class damaged as a result; does this settlement resolve the claims of the Class.

Furthermore, the effect of the various states' laws on the predominance requirement does not apply to this settlement Class.  Federal courts have specifically addressed this situation.  In

---

[33] *See* Order, Doc. #122, pg. 3.
[34] *See Simer v. Rios,* 661 F.2d 655, 677 (7th Cir. 1981) (the predominance issue incorporates manageability); *Gunnells v. Healthplan Services, Inc.,* 348 F.3d 417, 439 (4th Cir. 2003) (manageability is a requirement for predominance).
[35] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  The Supreme Court further held that "[s]ettlement is relevant to a class certification" and that "settlement is a factor in the calculus."  *Id.* at 619, 622.

affirming a certification of a settlement class involving the consumer protection and antitrust laws of fifty states, the Court in *In re Warfarin Sodium Antitrust Litigation* held:

> However, when dealing with variations in state laws, the same concerns with regard to case manageability that arise with litigation classes are not present with settlement classes, and thus these variations are irrelevant to certification of a settlement class . . . [A]lthough there may be situations where variations in state laws are so significant so as to defeat commonality and predominance even in a settlement class certification, this is not such a case. We agree with the district court that the fact there may be variations in the rights and remedies available to injured class members under the various laws of the fifty states in this matter does not defeat commonality and predominance.[36]

The holding in the *Warfarin* case has been echoed by other courts,[37] including cases when state law variances were found "irrelevant" for settlement purposes especially when the focus (like this case) is on "one defendant . . . and one course of conduct".[38] As in those cases, the claims in this litigation arise under broadly recognized legal principles, and any differences in state laws are not a factor and do not defeat predominance in this settlement context.

There are core common questions relative to this Settlement. Those common questions predominate over any individual issues and do not implicate potential state law variances.

6.    Superiority

A class settlement is clearly superior to "other available methods for fairly and efficiently adjudicating the controversy".[39] The Class consists of more than 850 members whose individual claims are relatively small in relation to the costs of prosecuting a lawsuit. Thus, from the consumers' standpoint, "a class action facilitates spreading of the litigation costs among the numerous injured parties and encourages private enforcement of the statutes."[40] Moreover, it is

---

[36] *In re Warfarin Sodium Antitrust Litigation,* 391 F.3d 516, 529-30 (3rd Cir. 2004).
[37] *See, e.g., Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022-23 (9th Cir. 1998) ("In this case, although some class members may possess slightly differing remedies based on state statute or common law, the actions asserted by the class representatives are not sufficiently anomalous to deny class certification.").
[38] *See In re Serzone Products Liability Litigation*, 231 F.R.D. 221, 240 (S.D.W. Va. 2005).
[39] Fed. R. Civ. P. 23(b)(3).
[40] *In re Warfarin Sodium Antitrust Litigation,* 391 F.3d at 534.

Class Counsel's understanding that there are no other lawsuits against Sears alleging these claims.

### 7.   Notice to the Class Was Proper

Per the directive of Rule 23, notice was provided to the Class informing them about the Settlement.[41]  The notice informed Class members (1) of the nature of the pending litigation, (2) of the Settlement's general terms, (3) that complete information was available from the court files, and (4) that any Class member could appear and be heard at the Fairness Hearing.  These are the essential requirements of an effective notice, and there is no requirement that the notice be unduly specific.[42]  Here, the Class Notice, submitted to this Court as an exhibit to the Settlement Agreement, contains the criteria set forth in Rule 23(c)(2)(B) and a fair description of the settlement pursuant to Rule 23(e)(3).

In light of the foregoing, all certification requirements relative to a class settlement have been satisfied.  The provisions of Rule 23(a) and (b) are no bar to final approval of this Settlement.

### B.   *APPLICATION OF THE FAIRNESS FACTORS*

After consideration of the Rule 23(a) and (b) requirements, the Court must next consider whether the Settlement is "fair, reasonable, and adequate" under the four factors enumerated by the Tenth Circuit.[43]  Here, all four factors are satisfied.

### 1.   The Settlement Was Fairly and Honestly Negotiated.

A settlement is deemed to have been fairly and honestly negotiated when it was "reached

---

[41]  Paul Dec., Exhibit A, pg. 2-3.

[42]  *See* 4 NEWBERG ON CLASS ACTIONS at §11:53.

[43]  FED. R. CIV. P. 23(e)(2); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); s*ee also Gottlieb*, 11 F.3d at 1014.

after arm's-length negotiations" conducted "by experienced counsel for the class."[44]  The non-collusive nature of negotiations and the experience of counsel are important factors militating in favor of final approval of class action settlements.[45]

The record before the Court amply supports a conclusion that the negotiation and settlement of this class litigation were fairly and honestly conducted.  Prior to settlement negotiations, Class Counsel reviewed voluminous documents and data and interviewed key witnesses, conducted depositions and analyzed the merits of this case.  Class Counsel prepared for negotiations by conducting a thorough investigation of the strengths and weaknesses of the case, including, among other things, reviewing Defendant's discovery responses, documents and data, investigating the legal and factual issues through interviews with Class Plaintiffs and witnesses, and evaluating the case under applicable legal standards. Class Counsel was thus fully positioned to evaluate the merits of the case as to both liability and damages.

The proposed Settlement was reached after extensive and arm's-length negotiations by respected and experienced counsel thoroughly familiar with the applicable law and class action litigation.  Nothing in the course of the negotiations of the settlement discloses collusion or any other grounds to doubt its fairness.

### 2.    The Ultimate Outcome of the Litigation Was In Doubt

In assessing the fairness, reasonableness, and adequacy of the proposed settlement, the Court must balance the benefits afforded to members of the settlement classes and the

---

[44]  *Marcus*, 209 F. Supp. 2d at 1182.
[45]  *See, e.g., United States v. Colo.,* 937 F.2d 505, 509 (10th Cir. 1991) (finding lack of collusion and employment of experienced counsel showed settlement was fairly and honestly negotiated); *In re King Resources Co. Sec. Litig.,* 420 F. Supp. 610, 626 (D. Colo. 1976) (finding that "each settlement was arrived at through arms-length and extensive negotiations between counsel for the plaintiffs and counsel for settling defendants and that such counsel engaged in no collusion whatsoever in arriving at such settlements").

immediacy and certainty of a substantial recovery for them against the continuing risks of litigation. Generally, the principal risks to be assessed are the difficulties and complexities of proving liability and damages.[46]

Plaintiffs alleged that Sears failed to pay all commissions due. Such acts and omissions, under Plaintiffs' theory, gave rise to several statutory and common law claims. Sears denied Plaintiffs' allegations. Sears argued that it timely made all necessary wage and commission payments, and did not withhold any payment from any Class member.

If Plaintiffs' allegations were ultimately correct, Sears would be faced with the prospect of a monetary verdict in favor of Plaintiffs. If Defendant's arguments were all correct, then Plaintiffs faced a potential dismissal of their claims and no recovery of any kind. Disputed questions of law and fact placed the ultimate outcome of this litigation in doubt. This element weighs in favor of approval.

3.     <u>The Value of an Immediate Recovery Outweighs the Possibility of Future Relief</u>

Courts have consistently held that "[t]he expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of [a] settlement."[47] This Settlement provides monetary benefits to the Class and constitutes real value, especially when weighed against the certain delays and considerable risks of litigating this case to judgment. Indeed, the highest potential payment to a class member is in excess of $750. Such benefits can hardly be characterized as illusory or inconsequential.

Moreover, even if some Class members could have possibly recovered a more valuable benefit by pursuing litigation, such relief would have only been obtained after considerable

---

[46] *Walsh v. Great Atl. & Pac. Tea Co.,* 96 F.R.D. 632, 642 (D.N.J. 1983), *aff'd,* 726 F.2d 956 (3rd Cir. 1983).
[47] *Milstein v. Huck,* 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Bullock v. Administrator of the Estate of Kircher,* 84 F.R.D. 1, 10 (D.N.J. 1979); *Slade v. Shearson, Hammill & Co., Inc.,* 79 F.R.D. 309, 313 (S.D.N.Y. 1978).

expense and delay. If the litigation, including the remaining discovery, expert witness and pretrial briefing process, were to continue it unquestionably would be complex, expensive, and protracted.   Settlement will reduce the litigation expense of the parties, dispose of burdensome litigation, and promote judicial economy — all significant factors weighing in favor of settlement.[48]   In recognition of this fact, many courts have admonished that the settlement process should not be transformed into a trial over what relief might have been gained but for the settlement:

> Neither should it be forgotten that compromise is the essence of a settlement.  The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.[49]

In short, the proposed Settlement presents meaningful relief for the Class that outweighs the uncertainty of future relief.[50]  This element weighs in favor of approval.

### 4.   The Parties and the Parties' Counsel Believe that the Settlement is Fair, Reasonable, and Adequate

The parties' view of the settlements as fair, reasonable, and adequate is entitled to great weight.[51]   When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable.[52]

---

[48]   *See Weiss v. Mercedes-Benz of N. Am., Inc.,* 899 F. Supp. 1297 (D.N.J. 1995) (burden on crowded docket is factor for consideration).

[49]   *Cotton,* 559 F.2d at 1331; *accord, Bowling v. Pfizer, Inc.,* 143 F.R.D. 141, 154 (S.D. Ohio 1992); *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984).

[50]   *See Dep't. of Energy Stripper Well Exemption Litig.,* 653 F. Supp. 108, 117 (D. Kan. 1986) ("The risks of continued litigation are substantial for all of the parties"); *see also In re King Resources,* 420 F. Supp. at 626 (noting uncertainty of plaintiffs prevailing without settlement, and likely delay of disbursement of funds given probable appeal).

[51]   *Rutter,* 314 F.3d at 1188; *Ashley v. Reg. Transp. Dist. & Amalgamated Transit Union,* No. 05-0156, 2008 WL 384579, at *7 (D. Colo. Feb. 11, 2008) ("Counsel's judgment as to the fairness of the agreement is entitled to considerable weight."); *see also Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 288-89 (D. Colo. 1997) ("[T]he recommendation of a settlement by experienced plaintiffs' counsel is entitled to great weight."); *Alvarado Partners, L.P. v. Mehta,* 723 F. Supp. 540, 548 (D. Colo. 1989) ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties.").

[52]   *Marcus,* 209 F. Supp. 2d at 1182.

Class Counsel are experienced complex and class action attorneys, and are knowledgeable about the factual and legal issues in the case. Class Counsel have worked diligently to prosecute this action over the past year and a half. They have engaged in significant discovery, and performed extensive analysis of the data and documents provided by Sears. In these circumstances, Class Counsel believe that the Settlement is fair and reasonable, and their evaluation should be afforded considerable weight.

C.     *REACTION OF THE CLASS MILITATES IN FAVOR OF APPROVAL*

1.     Only A Fraction Of The Class Opted-Out

Although the number of opt-outs is not an express "fairness" factor that this Court must consider in determining whether the Settlement is fair and reasonable, this fact speaks volumes. From the 857 Class Members, only 1 Class Member opted-out of the Settlement.[53] Since Class Members are presumed to know what is in their best interest, the small percentage who opted out (1 person, or .12% of the Class) strongly suggests that the vast majority of the Class (more than 99.88%) found the Settlement fair, reasonable and adequate.[54]

2.     There Were No Objections From The Class

Of the 857 Class members who were sent direct, mail notice of this Settlement, there were no objections.[55] That fact is significant, and weighs heavily in favor of approving the Settlement.[56] As the Court noted in *Stripper Well Exemption:*

> Finally, the near-unanimous support for the settlement agreement is a factor favoring approval by the Court. While a settlement stands or falls on its merits and not on a head count

---

[53]  Paul Dec., Exhibit A, pg. 3.
[54]  *See Austin v. Penn. Dept. of Corrections*, 876 F. Supp. 1437, 1458 (E.D. Pa. 1995) ("Because class members are presumed to know what is in their best interest, the reaction of the class to the Settlement Agreement is an important factor for the court to consider.").
[55]  Paul Dec., Exhibit A, pg. 3.
[56]  *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007).

between its proponents and objectors, the overwhelming support for the settlement carries some persuasive force.[57]

This Court recently made the same observation in granting final approval of a class settlement in *Williams v. Sprint*, "[w]hile the number of objectors is 'not controlling,' a relatively small number of objectors can be taken as 'some indication that the class members as a group did not think the settlement was unfair.'"[58]  This Court's logic applies with particular force in this case because, unlike in *Williams*, there were **no** objections filed in this case.[59]

###### D.   REACTION BY GOVERNMENT OFFICIALS MILITATES IN FAVOR OF APPROVAL

Pursuant to 28 U.S.C. § 1715, specific notice of this Settlement was sent to the appropriate government officials.  Not one of these officials filed an objection to this Settlement.  If the Settlement was unfair and unreasonable, these governmental officials could have stated as much.[60]  They have not.

## IV.   CONCLUSION

Class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a defendant that has allegedly caused harm.[61]  A settlement will usually not be considered a total win for either side.[62]  Rather, the essence of any settlement is compromise; compromise "between the maximum possible recovery

---

[57]   653 F. Supp. at 116; *see also In re King Resources,* 420 F. Supp. at 627 (finding lack of challenge to the settlements "significant").

[58]   *Williams v. Sprint/United Management Company*, 2006 WL 3256840, at *1 (D. Kan. Nov. 9, 2006) (*citing Cotton*, 559 F.2d at 1331 and *Kincade v. General Tire & Rubber Co*., 635 F.2d 501, 506, n.4 (5th Cir. 1981)).

[59]   Of the 1,697 class members in *Williams*, only two objected, resulting in a 0.11% objection rate.  *See* Order of Final Approval of Settlement, *Williams,* 2006 WL 326840, at *1.

[60]   Objections or intervention in class action settlements by state officials is not unknown.  *See, e.g.*, Order, *In re TD Ameritrade Accountholder Litig.*, No. C 07-2852, (N.D. Cal. Oct. 23, 2009).  Thus, such officials clearly know how to object and intervene.  The fact that they did not do so in this case is telling.

[61]   *See* 28 U.S.C. §1711(a).

[62]   *In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000).

and the inherent risks of litigation. The test is whether the settlement is adequate and reasonable and not whether a better settlement is conceivable."[63]  Plaintiffs respectfully suggest that this Settlement strikes a balance between the polarized positions demonstrated in recent pleadings, and is truly a fair, adequate and reasonable settlement.  Final approval is warranted.

Respectfully submitted.

Diane M. Breneman          #14125
Stacey L. Dungan            #13443
BRENEMAN DUNGAN, L.L.C.
311 Delaware
Kansas City, MO  64105
(816) 421-0114
FAX (816) 421-0112
db@litigationkc.com

and

_____ /s/ Joseph A. Kronawitter _____
Robert A. Horn
Joseph A. Kronawitter       #19665
HORN AYLWARD & BANDY, LLC
2600 Grand Blvd., Ste. 1100
Kansas City, MO 64108
(816) 421-0700
FAX (816) 421-0899
rhorn@hab-law.com
jkronawitter@hab-law.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all persons registered for ECF as of that date.

_____ /s/ Joseph A. Kronawitter __

---

[63] *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 258 (D. Del. 2002) (citation omitted); *see also E.E.O.C. v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir. 1985); *Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 282-3 (D. Colo. 1997).