# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Clara Seamands et al.,**

        **Plaintiffs,**

**v.**                                    **Case No. 09-2054-JWL**

**Sears Holding Corporation;**
**Sears Roebuck and Co.; Sears Outlet**
**Stores, LLC; and Sears Holdings**
**Management Corporation,**

        **Defendants.**

## MEMORANDUM & ORDER

Having settled this class action lawsuit, plaintiffs now move the court for an award of attorneys' fees in the amount of $242,172.00 and costs and expenses in the amount of $20,177.69. As will be explained, the motion is granted in part, denied in part and retained under advisement in part. The court awards $73,052.50 in attorneys' fees and $8221.97 in costs and expenses. The court retains the motion under advisement with respect to the issues of who is entitled to receive the fee and how that fee should be distributed. Toward that end, plaintiffs are directed to show good cause to the court on or before Friday, April 1, 2011 why the fee award in this case should not be distributed on a pro rata basis directly to those class members entitled to a fee; why notice should not be reissued to those class members who are entitled to a fee award in this case; and why plaintiffs should not bear the cost of that notice.

## I.    Overview

In January 2009, plaintiffs, current and former employees of Sears' outlet stores, filed this class action lawsuit on behalf of current and former employees of defendants' "retail stores" alleging that defendants wrongfully withheld sales incentive compensation. In addition to breach of contract claims, plaintiffs asserted claims under the state wage payment laws of 36 states as well as the laws of Puerto Rico. By amended complaint filed in September 2009, plaintiffs clarified that they intended to pursue claims against both Sears' outlet stores and Sears' full-line stores and, toward that end, added a named plaintiff who had been employed at Sears' full-line stores. In June 2010, the parties moved to certify a class for settlement purposes, which was limited to outlet store employees working outside the state of California who sold a covered item during a specified time frame, and for preliminary approval of their settlement, pursuant to which defendants agreed to pay a total settlement amount of $36,114.00 to the settlement class. The court granted the motion and scheduled a final approval hearing.

Notice of the settlement was then mailed to the 857 potential members of the  settlement class and only one potential class member opted-out of the class. The settlement administrator ultimately received 137 valid claim forms from members in 24 states as well as Puerto Rico representing an award amount of $10,452.50. No objections were filed. Thereafter, the parties moved for final approval of the settlement. In addition, plaintiffs filed a motion for attorney fees, expenses and class representatives' incentive awards asserting a claim for $242,172.00 in attorney fees and $20,177.69 in expenses. At the final approval hearing on October 4, 2010, the court granted the parties' motion for final approval of the settlement and approved the incentive

awards as unopposed.[1]

With respect to plaintiffs' motion for attorney fees and expenses, however, the court expressed several specific concerns with plaintiffs' request, both in terms of whether plaintiffs would be able to show that they were entitled to a fee award at all and, if so, whether they would be able to show that a fee award in excess of $240,000 in the face of a $36,000 recovery was nonetheless reasonable. Concluding that the briefing on the fee issue was both unfocused and unhelpful, the court retained the motion under advisement and directed the parties to file supplemental briefs on the fee issue. That briefing has now been submitted.

In their initial motion for fees, plaintiffs asserted an aggregate claim for class-wide fees on the grounds that certain class members alleged claims under certain state wage payment statutes that, in turn, contained fee-shifting provisions, and because the work done by plaintiffs' counsel was "indivisible" in that it was not conducted on a state-by-state basis, plaintiffs, as a class, were entitled to an award of fees.[2] At the October 4, 2010 hearing, the court advised plaintiffs that they had not adequately shown (or directed the court to any authority) that this

---

[1]The court granted the motion only after the parties explained to the court's satisfaction how the $36,114.00 figure was fair and reasonable in light of plaintiffs' assertion in their complaint that their claims exceeded $5 million. As explained by plaintiffs, the $5 million figure was based on damages allegedly sustained not only by individuals employed by Sears' outlet stores, but also by individuals employed by Sears' full-line stores who, according to plaintiffs, numbered "many, many thousand more" than outlet employees. Indeed, plaintiffs' counsel estimated that as much as $4.8 million of the $5 million claim for damages was attributable to damages allegedly sustained by full-line employees. Because the settlement covers only claims asserted by outlet employees, the court concluded that the settlement was fair and reasonable.

[2]There is no contractual provision entitling plaintiffs to a fee award.

theory of recovery was a viable one. In their supplemental briefing, plaintiffs have abandoned their efforts to obtain fees on a class-wide basis. Now, those plaintiffs who worked for Sears in one of eight specific states whose wage payment statutes contain fee-shifting provisions have asserted individual claims for fees. Plaintiffs still seek the full amount of the fee request on the grounds that the work done by counsel was not done on a state-by-state basis (it was indivisible) and counsel would have performed the same work even if this had been a single-plaintiff case. Consistent with this approach, plaintiffs urge that the court, in order to a award a full fee, need find only one state statute under which one class member would be entitled to fees. According to plaintiffs, then, if the court deems that named plaintiff Glenn Burrows is entitled to fees under the pertinent Missouri statute, then it need not look to any other state statute and may award plaintiffs their full fee because counsel's work was indivisible.

But there are clearly problems with this approach. First, the approach is premised on the notion that any fee award in this case would be paid directly to plaintiffs' counsel. For plaintiffs cannot mean to suggest that Mr. Burrows, in addition to whatever sum he received under the settlement agreement, would receive $242,172 and that plaintiffs' counsel would then take a percentage of that amount as provided in their contingent fee agreement with Mr. Burrows. This arrangement would not only provide a windfall to Mr. Burrows to the detriment of any other class member entitled to a fee but would undoubtedly present ethical problems for plaintiffs' counsel. But so, too, does counsel's implicit suggestion that any fee award be paid directly to counsel. The statutes under which plaintiffs seek attorneys' fees provide that attorneys' fees are available to the parties themselves, not to counsel. Each individual class member who would

have been entitled to recover fees in an individual action should not lose that opportunity because they participated in a class action, where an award of fees is sought only on an individual basis. The court, then, cannot simply find one statute under which one class member would be entitled to fees and stop the analysis there. Rather, the court must undertake an analysis of the pertinent laws of each of the eight states identified by plaintiffs as the basis for a fee award in this case. Moreover, because any fee award in this case belongs to the parties rather than counsel, the total amount of money available for distribution is potentially larger than indicated in the notice that was mailed to those class members. It may be, then, that class members who did not file a claim may have been inclined to do so if the amount available was higher. In all likelihood, that "higher" amount will not include the full fee award, for it makes very little practical sense to distribute the entire fee amongst those plaintiffs entitled to a fee award and then expect plaintiffs' counsel to collect their share from those individuals. An obvious starting point might be the contingency fee arrangement that counsel executed with the named plaintiffs, which provides for a 33% pre-trial settlement contingent fee, such that plaintiffs' counsel would take that percentage from the total recovery in this case (the fee award plus the underlying recovery) and distribute the remaining amount to those plaintiffs entitled to a fee award.

Plaintiffs, then, have simply not come to grips with the critical issues of who actually receives the fee award in this case and how that fee award should be disbursed. Plaintiffs, then, are directed to show good cause to the court on or before Friday, April 1, 2011 why plaintiffs' counsel should not retain from the fee award an amount equal to 33% of the sum of the fee

award and the underlying recovery in this case; why the remainder of the fee award should not be distributed on a pro rata basis directly to those class members entitled to a fee; why notice should not be reissued to those class members who are entitled to a fee award in this case; and why plaintiffs' counsel should not bear the cost of that notice. Defendants shall file any response no later than Friday, April 8, 2011.

## II.      Whether Any Class Members are Entitled to a Fee?

As explained above, the court must undertake a state-by-state analysis to determine whether any class members are entitled to recover fees pursuant to the particular state wage payment law under which those class members asserted a claim against defendants. As will be explained, the court concludes that those class members who work or worked for defendants in Florida, Wisconsin, Pennsylvania, Delaware and Washington are entitled to a fee award under those states' wage payment statutes.[3] Class members in Missouri, Connecticut and New York are not entitled to a fee award.

*A.      Missouri*

---

[3]Defendants criticize plaintiffs for identifying the states in which class members reside as opposed to those states in which class members worked for defendants. According to defendants, one cannot conclude that a plaintiff worked in a particular state (the pertinent inquiry for determining whether a plaintiff is entitled to protection under a state's wage payment law) simply because that plaintiff resides in that state. While the court agrees with defendants' statement, in the absence of any showing from defendants that any class member works or worked for defendants in a state other than the state in which he or she resides, the court is comfortable finding that the class members worked in their states of residence.

Those class members who work or worked for defendants in Missouri seek attorneys' fees under Missouri's statute on commissions for sales representatives. The pertinent section provides:

> Any principal who fails to timely pay the sales representative commissions earned by such sales representative shall be liable to the sales representative in a civil action for the actual damages sustained by the sales representative and an additional amount as if the sales representative were still earning commissions calculated on an annualized pro rata basis from the date of termination to the date of payment. In addition the court may award reasonable attorney's fees and costs to the prevailing party.

Mo. Rev. Stat. § 407.913 (2005).[4] The Missouri class members have not shown that they are entitled to fees under this statute. The statute has been construed to apply only to "terminated" employees and there has been no effort by the class members to establish whether any of the class members were terminated by defendants. *See McKay v. WilTel Comm. Sys., Inc.*, 87 F.3d 970, 975 (8th Cir. 1996) (statute is "designed to prevent loss of commissions because of discharge from employment"; employee who left voluntarily to pursue another business opportunity was not covered by statute); *Skillington v. Activant Solutions, Inc.*, 2009 WL 3852804, at *6 (E.D. Mo. Nov. 17, 2009) (Missouri Sales Commission Statute "provides that a terminated employee is entitled to commissions on sales where products or services were ordered prior to the employee's termination."). Because plaintiffs have not satisfied their burden

---

[4]Despite the fact that plaintiffs expressly seek fees under § 407.913, defendants' argument against an award of fees is based on a construction of § 407.025. While it may be that the statutes are sufficiently analogous such that a court's interpretation of § 407.025 is helpful to an interpretation of § 407.913, the court declines to engage in that analysis where defendants have not done so.

of establishing entitlement to an award of fees under Missouri law, plaintiffs' motion for an award of fees is denied to the extent the motion is based upon Missouri law.

B.      *Connecticut*

Those class members who work or worked for defendants in Connecticut seek an award of fees under § 31-72 of the Connecticut General Statutes.  That section provides that "[w]hen any employer fails to pay an employee wages . . .  such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court."  Conn. Gen. Stat. § 31-72 (2010).   Plaintiffs acknowledge that an award of reasonable fees under this statute is entirely discretionary and request that the court exercise its discretion to award a reasonable fee.  However, the Connecticut Supreme Court has held that "it is appropriate for a plaintiff to recover attorney's fees . . . under § 31-72, only when the trial court has found that the defendants acted with bad faith, arbitrariness or unreasonableness." *Saunders v. Firtel*, 978 A.2d 487, 498 (Conn. 2009) (citing cases).  In their supplemental motion, plaintiffs do not contend that defendants acted with bad faith or unreasonableness.   In any event, because the parties' settlement agreement expressly contemplates that there have been no findings against defendant of  wrongdoing "of any kind," the court is simply not able to make such a finding even assuming the record supported that finding (and the court in no way suggests that it does).  Plaintiffs, then, have not shown that they are entitled to an award of fees under Connecticut law and their motion for an award of fees is denied to the extent it is based on Connecticut law.

*C.*     *Florida*

Those plaintiffs who work or worked for defendants in Florida seek an award of fees under § 448.08 of the Florida Statutes, which provides that the "court may award to the prevailing party in an action for unpaid wages costs of the action and a reasonable attorney's fee." Fla. Stat. § 448.08 (2009). Because § 448.08 does not create an independent cause of action, *see Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1270-71 (11th Cir. 2009), and because plaintiffs' amended complaint does not reference any other Florida statute under which they are arguably entitled to recover wages, plaintiffs' unpaid wages claim under Florida law is necessarily based on plaintiffs' breach of contract claim–a permissible basis for the recovery of fees under § 448.08. *See, e.g.*, *Davis v. National Med. Enterprise, Inc*., 253 F.3d 1314, 1322 (11th Cir. 2001) (affirming award of fees under § 448.08 for fees incurred in connection with breach of contract claim); *Souder v. Premier Automotive on Atlantic, LLC*, 2009 WL 691916, at *3 (M.D. Fla. Mar. 13, 2009) (Florida common law claim provided appropriate basis for recovery of fees under § 448.08). To the extent, then, that defendants contend that plaintiffs must establish that they prevailed "on the Florida wage payment law," that argument is rejected. Plaintiffs must simply prevail on their breach of contract claims and defendants acknowledge in other portions of their briefing that, pursuant to the settlement agreement, they paid plaintiffs, at the most, the "contract value" of their claims.

Defendants also contend that a party "prevails" for purposes of § 448.08 only when there is an "affirmative judgment rendered" and that no judgment was issued in this case; rather, the parties simply settled their dispute by private agreement and the court "issued an order"

incorporating that agreement. This argument is rejected for two reasons. First, Florida law does not limit prevailing parties under § 448.08 to those parties receiving an affirmative judgment. The sole case relied upon by defendants for their argument concerned the situation in which a plaintiff recovered on one count of a two-count complaint and the trial court deemed the plaintiff the prevailing party and awarded fees as to the count on which he prevailed. *Bill Rivers Trailers, Inc. v. Miller*, 489 So. 2d 1139, 1141 (Fla. Dist. Ct. App. 1986). The defendant, then, requested fees in connection with the count under which the plaintiff had not prevailed, claiming that it was the "prevailing party" under § 448.08 as to that count. *Id*. The trial court denied the defendant's fee request and concluded that the defendant was not the prevailing party. The appellate court affirmed, concluding that the trial court's determination "is in keeping with case law to the effect that a plaintiff who obtains an affirmative judgment on one count in a multicount complaint is the prevailing party." *Id*. at 1142. *Bill Rivers*, then, cannot reasonably be interpreted to mean that only parties who obtain an "affirmative judgment" are entitled to fees under § 448.08. Indeed, at least one Florida court has assigned prevailing party status under § 448.08 to an employee who settled her claim for unpaid wages prior to trial. *See Tampa Bay Publications, Inc. v. Watkins*, 549 So. 2d 745, 746-47 (Fla. Dist. Ct. App. 1989).

Second, even assuming Florida law required that a prevailing party obtain an "affirmative judgment," the court in this case has done more than simply "issue an order" memorializing the parties' settlement agreement. It has entered a "final order and judgment" in which it incorporated by reference the parties' settlement agreement, which includes payments to class members that are expressly deemed "wage payments" in the agreement itself. The court's final

order and judgment, then, would constitute an "affirmative judgment" for purposes of Florida law even under the construction urged by defendants.[5]

Finally, although an award of fees under § 448.08 is permissive and not mandatory, *see Williams v. Florida Memorial College*, 453 So. 2d 541, 542 (Fla. Dist. Ct. App. 1984), the statute does not limit the award of fees to cases where the non-prevailing party acts with bad faith or unreasonableness. *See Embler .v Walker Elec. Sys. of Florida, Inc*., 2008 WL 2338102, at *2 (M.D. Fla. 2008). Rather, the statute gives courts discretion to award attorney's fees to a prevailing party based on the facts and circumstances of a particular case. *Id.* The court, then, will exercise its discretion and will award fees, as described more fully below, to the Florida class members under § 448.08.

D. *Wisconsin*

Those class members who work or worked for defendants in Wisconsin seek an award of fees under § 109.03(6) of the Wisconsin Statutes. That section provides that "[i]n an action by an employee or the department against the employer on a wage claim, no security for payment of costs is required. In any such proceeding the court may allow the prevailing party, in addition to all other costs, a reasonable sum for expenses." Defendants do not advance any

---

[5]Defendants do not suggest that Florida or any other state at issue here has adopted the more stringent federal standard for "prevailing party" status adopted by the Supreme Court in *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598 (2001). The court, then, need not determine whether the court's judgment here would satisfy that standard.

specific argument against an award of fees under this statute and it is undisputed by defendants that "expenses" for purposes of § 109.03(6) has been interpreted to include an award for attorney fees. *Tennyson v. School Dist. of Menomonie Area*, 606 N.W.2d 594, 605 n.4 (Wis. App. 1999). Defendants simply point out that the Wisconsin statute is discretionary. While it is true that the statute does not require an award of fees, the court appropriately exercises its discretion when an award will further the purposes of the statute, including encouraging employers to promptly pay wages when due. See *Jackman v. WMAC Inv. Corp.*, 610 F. Supp. 290, 291 (C.D. Wis. 1985), *aff'd*, 809 F.2d 377, 384 (7th Cir. 1987) (court appropriately exercised its discretion under § 109.03(6) by concluding that an award of fees would further the objectives of the statute).

The court cannot discern any reason not to award fees to the Wisconsin class members. The statute on its face is broad enough to encompass not only claims under the wage payment statute itself but also breach of contract claims based on unpaid wages. *See Jacobson v. American Tool Companies*, 588 N.W.2d 67, 69, 74-75 (Wis. Ct. App. 1998) (affirming trial court's award of fees to plaintiff under § 109.03(6) where trial court found in favor of plaintiff on breach of contract claim but found in favor of defendant on plaintiff's statutory wage payment claim). Because the parties here asserted breach of contract claims (in addition to claims under Wisconsin's wage payment law) and settled for the "contract value" of their claims, the fact that the settlement agreement does not expressly attribute payments or wages to the Wisconsin wage payment law (or, stated another way, that plaintiffs may not be able to establish that they recovered under the Wisconsin wage payment law) is of no consequence. Finally, as explained above in connection with the Florida class members, the fact that the parties settled their dispute

12

by private agreement does not extinguish plaintiffs' prevailing party status because the court has formally approved the settlement and has entered judgment incorporating the terms of that settlement and retaining jurisdiction over the case. In sum, the court will exercise its discretion and will award fees, as described more fully below, to the Wisconsin class members under § 109.03(6).

E.    *New York*

Those class members who work or worked for defendants in New York seek an award of fees under § 198 of the New York State Labor Law (NYLL), which provides that "[i]n any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee reasonable attorney's fees and, upon a finding that the employer's failure to pay the wage required by this article was willful, an additional amount as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due." New York's highest court has determined that the plain language, legislative history and purpose of § 198 "all indicate that the intent of the statute is that the attorney's fees remedy provided therein is limited to wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6." *Gottlieb v. Kenneth D. Laub & Co.*, 626 N.E.2d 29, 30 (N.Y. 1993). More specifically, New York courts have held that § 198 must be narrowly construed and is not intended to provide a remedy for the "successful prosecution" of a breach of contract claim. *Id*. at 32-33. In other words, the attorneys' fees remedy under § 198 is available only to an employee who "prevails" on a claim founded on the substantive provisions

of Labor Law article 6. *See id.* at 33.

The court concludes that the New York class members have not proven that they are entitled to a fee award pursuant to § 198. Although plaintiffs' amended complaint asserts a cause of action based upon an alleged violation of § 191 of Labor Law article 6, there is no evidence in the record that the judgment obtained by the New York class members is in any way tied to the substantive provisions of New York Labor Law article 6. The parties' settlement agreement makes no reference to the statute. In light of the fact that New York's highest court has narrowly construed section 198 and has cautioned that the statute cannot be used to remedy a breach of contract claim, the court believes that New York courts would not permit the New York class members here to seek fees based on a generic judgment for wages in the absence of any indication that the class members prevailed on the substantive article 6 claim. *See Deutsche Asset Management, Inc. v. Callaghan*, 2004 WL 758303, at *9 (S.D.N.Y. Apr. 7, 2004) (fees not available under § 198 unless party first establishes violation of a substantive provision of article 6); *Carlson v. Katonah Capital, LLC*, 2006 WL 273548, at *1 (N.Y. Sup. Ct. Jan. 27, 2006); *Scheer. v. Kahn*, 221 A.D.2d 515, 517 (N.Y. App. Div. 1995) (award of fees under § 198 impermissible where plaintiff obtained judgment for contract damages).

F.      *Pennsylvania*

Those class members who work or worked for defendants in Pennsylvania seek an award of fees pursuant to the fee-shifting provision of Pennsylvania's Wage Payment and Collection Law (WPCL), which states that the "court in any action brought under this section shall, in

14

addition to any judgment awarded to the plaintiff or plaintiffs, allow costs for reasonable attorneys' fees of any nature to be paid by the defendant." *See* 43 Pa. Cons. Stat. § 260.9a(f). In their amended complaint, plaintiffs assert a substantive claim under the WPCL and, by virtue of the court's entry of judgment incorporating the parties' settlement agreement, plaintiffs have obtained a judgment for "wages," as the agreement expressly refers to the payments as "wage payments." While neither the judgment nor the parties' settlement agreement attributes any payments to the WPCL, the court finds no authority under Pennsylvania law conditioning an award of fees under § 260.9a(f) on a judgment that expressly attributes payments or wages to the WPCL or otherwise establishes a vindication of the class members' rights under the WPCL. In any event, it appears that plaintiffs' breach of contract claim is an adequate predicate for their fee request under the WPCL. *See Tambay v. Peer*, 2006 WL 2037465, at *1 (E.D. Pa. 2006) (plaintiff entitled to fees under WPCL on all claims for back pay, including breach of contract claim). Finally, the court notes that an award of attorneys' fees to a prevailing plaintiff is mandatory under the WPCL, but the trial court has discretion with respect to determining the appropriate amount of the fee award. *Ambrose v. Citizens Nat. Bank of Evans City*, 5 A.3d 413, 418-19 (Pa. Super. 2010). Because the Pennsylvania class members have obtained a judgment in an action brought under the WPCL, the court will award attorneys' fees to those class members pursuant to § 260.9a(f).

G.    *Delaware*

Those class members who work or worked for defendants in Delaware seek an award of

fees under Delaware's Wage Payment and Collection Act (the Wage Act), Del. Code Ann. tit. 19 § 1101 et seq. The pertinent portion of the Wage Act provides as follows: "Any judgment entered for a plaintiff in an action brought under this section shall include an award for the costs of the action, the necessary costs of prosecution and reasonable attorney's fees, all to be paid by the defendant." Del. Code Ann. tit. 19 § 1113(c). In their amended complaint, plaintiffs assert a substantive claim under the Wage Act and, by virtue of the court's entry of judgment incorporating the parties' settlement agreement, plaintiffs have obtained a judgment for "wages." While neither the judgment nor the parties' settlement agreement attributes any payments to the Wage Act, the court finds no authority under Delaware law conditioning an award of fees under the Wage Act on a judgment that clearly establishes a vindication of the class members' rights under the Wage Act. Finally, the court notes that an award of attorneys' fees to a prevailing plaintiff is mandatory under the Wage Act. *Pouser v. Dimensional Stone Prods., LLC*, 2009 WL 142990, at *3-4 (Del. Super. Ct. Jan. 12, 2009). Because the Delaware class members have obtained a judgment in an action brought under the Wage Act, the court will award attorneys' fees to those class members pursuant to Del. Code Ann. tit. 19 § 1113(c).

## H.     Washington

Those class members who work or worked for defendants in Washington seek an award of fees under § 49.48.030 of the Revised Code of Washington, which provides that "[i]n any action in which any person is successful in recovering judgment for wages or salary owed to him or her, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed

16

against said employer or former employer: PROVIDED, HOWEVER, That this section shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary." Washington courts have liberally construed the statute in favor of the employee, *see, e.g., McGinnity v. AutoNation, Inc*., 202 P.3d 1009, 1013 (Wash. Ct. App. 2009), and have applied the statute to cases involving a variety of theories of recovery. *Fraser v. Edmonds Comm. College*, 147 P.3d 631, 633 (Wash. Ct. App. 2006) (collecting cases). Thus, while plaintiffs' complaint does not reference a specific wage payment statute under Washington law,[6] plaintiffs' breach of contract claim is a sufficient predicate for their fee request under § 49.48.030. *Id*. (the statute awards fees in "any action," including breach of contract and wrongful discharge).

Plaintiffs must also establish that they obtained a "judgment for wages." As noted earlier, the court entered a judgment in this case in which it approved the parties' settlement and incorporated by reference the terms of that settlement agreement. Pursuant to the terms of the settlement, the payments made to the class members are deemed "wage payments." Defendants do not contend otherwise. Indeed, defendants' only specific argument against an award of fees under Washington law is that plaintiffs have not shown that they recovered any more than what defendants admitted it owed, bringing this case within the exception contained in the fee statute. Plaintiffs correctly point out, however, that defendants have not, in fact, admitted that they owed

---

[6]In their amended complaint, plaintiffs reference RCW 49.48.170 which, as quoted by plaintiffs in their complaint, simply requires payment "at the usual place of payment" unless the employee requests payment through registered mail. Clearly, this statute is not an appropriate vehicle for plaintiffs' claims that defendants failed to pay wages due and owing.

any wages to these plaintiffs. In the settlement agreement executed by the parties, defendants expressly deny all claims and affirmatively contend that they paid all employees in compliance with the law. Any recovery by the Washington class members, then, is necessarily more than the amount admitted by defendants to be owing.

Finally, the court notes that an award of fees under § 49.48.030 is not discretionary once a person establishes entitlement to fees under the statute. *See Wise v. City of Chelan*, 135 P.3d 951, 955 (Wash. Ct. App. 2006). Because the plain language of § 49.48.030 entitles the Washington class members to reasonable attorney's fees, the court will award such fees as described more fully below.

## III. Calculating a Reasonable Fee

The court now turns to address the amount of plaintiffs' fee request. Once a party has established its entitlement to fees as a "prevailing party," the court must determine what fee is "reasonable." *Ellis v. University of Kansas Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998). As courts have long recognized, the most useful starting point for determining the amount of a reasonable fee is the "lodestar" figure–"the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *See id.* (quoting *Beard*, 31 F.3d at 955) (quoting *Hensley*, 461 U.S. at 433)); *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998) (quoting *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995)). Once the court determines the lodestar, it must then determine whether any upward or downward adjustment should be made to the lodestar "to account for the particularities of the suit and its

outcome." *See Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997) (citing *Hensley*, 461 U.S. at 433-34).[7]

In support of their fee request, plaintiffs' counsel have submitted the billing records from both law firms that represented plaintiffs–Horn Aylward & Bandy, LLC and Breneman Dungan, LLC. From the Horn Aylward firm, shareholders Robert Horn and Joseph Kronawitter spent time working on the case. In addition, one associate and one paralegal spent time on the case. From the Breneman Dungan firm, shareholders Diane Breneman and Stacey Dungan spent time working on the case and one associate from the firm worked on the case as well. Taken together, the billing records reflect a total fee request of $242,172.00.[8]

---

[7]Each of the 5 states in which plaintiffs are entitled to fees in this case has expressly adopted the lodestar method of calculating attorneys' fees in statutory fee-shifting cases. Nonetheless, for ease of discussion, the court relies on federal law concerning the lodestar analysis, bearing in mind that there is no discernible difference between federal law and the 5 states' laws on this subject.

[8]After filing their initial motion for fees but before the hearing on the motion, plaintiffs updated their fee request to include an additional $33,144.50 for time spent in connection with the fee request. In their reply brief filed in support of their supplemental fee motion (and the exhibits attached thereto), plaintiffs indicate that they have now spent more than $41,000 litigating the fee issue. They have expressly declined to include that amount in their fee request at this juncture in light of the court's comments at the hearing that the plaintiffs' briefing was "simply of no assistance" to the court because it failed to "come to grips" with several significant issues relating to plaintiffs' entitlement to fees. Nonetheless, plaintiffs "leave it to the Court's discretion as to how much, if any, this Court will award with respect to the time spent briefing the issue of attorney's fees, and simply make this request for purposes of preserving this issue." The court will not award any fees in this case for litigating the fee issue. As noted at the hearing, the initial round of briefing was entirely unhelpful to the court. The supplemental briefing, while somewhat improved, still requires the court to sort through much of the entitlement issue on its own without meaningful assistance from plaintiffs.

*A.*     *Hours Reasonably Expended*

In calculating the number of hours reasonably spent by counsel for the party seeking fees, the court must ensure that counsel has exercised proper "billing judgment." *Case*, 157 F.3d at 1250 (citing *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)). As the Tenth Circuit recently reiterated, billing judgment "consists of winnowing the hours actually expended down to the hours reasonably expended." *See id.* (citing *Ramos*, 713 F.2d at 553). An analysis of whether counsel has exercised proper "billing judgment" requires a two-step inquiry. First, the court examines whether specific tasks are properly chargeable at all. *See id.* ("Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party, making certain time presumptively unreasonable.") (citing *Ramos*, 713 F.2d at 553-54) (giving as an example time spent doing background research)). Second, after examining the specific tasks and whether they are properly chargeable, the court examines the hours expended on each task to determine if they are reasonable. *Id.* However, the court "need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's fees should not result in a second major litigation.'" *Ellis*, 163 F.3d at 1202 (quotations and citations omitted); *accord Case*, 157 F.3d at 1250. At all times, counsel for the party seeking fees has the burden to prove that their hours were

---

Plaintiffs also seek in their reply brief to the supplemental motion an additional $4158.00 in fees incurred from September 9, 2010 through October 6, 2010 in connection with administration of the settlement and preparing for and attending the fairness hearing. These amounts were clearly known to plaintiffs well before they filed their supplemental motion and yet they did not mention these fees until the filing of their reply brief. The request has been waived and is denied on that basis.

reasonable.  *See, e.g., Case*, 157 F.3d at 1259.

In calculating the number of hours reasonably expended in this case, the court must begin by ascertaining what amount of time plaintiffs' counsel spent on efforts to expand this case to Sears' full-line stores as opposed to only Sears' outlet stores.  Because any fee award in this case will be awarded on an individual basis, as opposed to the class collectively, plaintiffs–who never asserted claims against Sears' full-line stores–are not able to recover fees for time spent pursuing claims against full-line stores.  And even assuming that fees could be awarded on a class-wide basis, fees relating to counsel's efforts to expand this case to Sears' full-line stores would still not be recoverable.  Significantly, the settlement class was limited to Sears' outlet employees after plaintiffs' counsel made the strategic decision, as explained by counsel at the hearing on the motion, to save "for a later day" claims by full-line employees against full-line stores.

Defendants contend that plaintiffs' counsel, between mid-July 2009 and mid-September 2009, spent nearly all their time attempting to expand the case to include full-line employees, including working on an amended complaint to add a plaintiff who worked at a full-line store and drafting and filing motions to compel seeking discovery related to Sears' full-line stores. Plaintiffs have not attempted to separate for the court those hours spent solely on the "full-line" side of the case and they do not dispute that the majority of the time they spent during this time period was dedicated to the full-line stores.  Indeed, counsel's billing records during this time frame reflect numerous entries concerning the scope of discovery, the planning and drafting of Golden Rule letters relating to plaintiffs' efforts to expand discovery to full-line stores, the drafting and filing of the motions to compel seeking such discovery and the drafting of a second

amended complaint to include an employee who worked at a full-line store. Thus, the court will disallow 34.7 hours of Mr. Horn's time; 93.3 hours of Ms. Breneman's time; 46.3 hours of Ms. Dungan's time; 43.2 hours of Mr. Kronawitter's time; 43.4 hours of associate time; and 49.2 hours of paralegal time to compensate for time spent pursuing claims against the full-line stores during the period from July 21, 2009 (beginning with time entries concerning "trial team" meetings concerning status of the case and discovery issues) through September 20, 2009 (just prior to preparation for and deposition of Barb Waite, who testified as to the exact amount owing to outlet employees and prompting plaintiffs' decision to pursue mediation of the outlet claims).[9]

Although the effect is very significant, the court does not believe that it is disallowing a disproportionate number of hours or attributing too many hours to plaintiffs' efforts to expand this case to full-line stores. The fact that plaintiffs' counsel spent a great deal of time attempting to expand the case to include full-line stores is entirely consistent with plaintiffs' counsel's view, at the time they filed the initial complaint, that there were "many, many thousand more" full-line employees (than outlet employees) who had not been properly paid commissions. As plaintiffs' counsel explained at the hearing, the claims against Sears' full-line stores accounted for at least $4.8 million of the $5 million in damages alleged in plaintiffs' complaint. It is not surprising, then, that plaintiffs' counsel spent a significant number of hours attempting to include such

---

[9]Defendants challenge many of the entries within this time frame for independent reasons, such as that the time is duplicative, excessive, uncompensable travel time or is noncompensable paralegal time because the tasks were clerical tasks. Because the court has disallowed nearly all the time within this time frame because plaintiffs have not shown that the time was not spent primarily pursuing claims against full-line stores, the court does not reach the merits of these independent arguments.

claims in this lawsuit.

Defendants also challenge numerous entries that reflect the practice of "block billing" in which counsel have failed to allocate the precise amount of time spent on each particular task during each individual day. *See Robinson v. City of Edmond*, 160 F.3d 1275, 1285 (10th Cir. 1998). Specifically, defendants urge the court to disallow 15.7 hours of Mr. Horn's time; 75.5 hours of Ms. Breneman's time; 134 hours of Ms. Dungan's time; 31.3 hours of Mr. Kronawitter's time; and 30.4 hours of associate time because these hours are derived from entries that have been block billed.[10] While the court agrees that many of the entries identified by defendants are block-billed entries, the court does not believe that all of those entries are block-billed entries. By way of example, defendants challenge an entry for 2.4 hours made by Mr. Kronawitter which states "Review answer and motion to dismiss recently filed and begin outlining argument in response." Defendants challenge an entry for .3 hours made by an associate which states "Reviewed correspondence regarding petition, checked Local Rule 23.1(a), and modified complaint to comply with that rule." In the court's mind, the descriptions

---

[10]In their reply, plaintiffs have submitted revised billing records that allegedly delineate, for each entry challenged by defendants, how hours were allotted to each specific task. Plaintiffs do not contend that these revised billing records are contemporaneous time records or there is no evidence that they were created in any way other than through post-hoc guesswork. *Compare Robinson*, 160 F.3d at 1285 (supplemental billing statements adequate where those statements consisted of "the actual contemporaneous time slips" that were the basis of the billing statements initially submitted). Because plaintiffs' revised time records, at best, represent only an approximation of the time actually expended on tasks, the court is disinclined to assign much weight to those records. In any event, because the court is also disinclined to strike all block-billed entries in their entirety, plaintiffs will suffer no prejudice from the court's decision to disregard the revised records.

entered by the timekeepers do not necessarily combine isolated, discrete tasks but events or tasks that are relatively seamless.

That being said, there are numerous entries for larger amounts of time that do combine many discrete tasks, including tasks that are not properly chargeable. Ms. Breneman's time entries, for example, contain large blocks of time that include tasks such as "basic research" on wage and hour laws. Time spent on such research is not properly shifted to an opposing party. *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1253 (10th Cir. 1998) (time spent familiarizing oneself with the general area of law should be absorbed in the firm's overhead and not be billed to the client or an adversary). Because the entries in which these tasks are identified have been block-billed, the court cannot discern how much time Ms. Breneman spent on such research. Similarly, Ms. Dungan's time entries contain large blocks of time that include tasks spent preparing for the depositions of multiple plaintiffs or communicating with multiple plaintiffs. Because plaintiffs' counsel have not shown that they are entitled to fees on a class-wide basis but have shown only that fees are available on an individual basis, the total fee award properly includes only that time spent with respect to one plaintiff.[11] Ms. Dungan's tendency to block-bill, however, renders the court unable to carve out the time that was spent on these issues. Finally, those entries for large amounts of time that do contain numerous tasks make it

---

[11]This conclusion is consistent with plaintiffs' theory in support of their fee request that the work performed by plaintiffs' counsel on this case was "indivisible" work such that counsel would have performed the same work if this case had been a single-plaintiff case. Of course, if this had been a single-plaintiff case, counsel would not have been preparing for and taking the depositions of multiple plaintiffs and would not have been communicating with multiple clients.

impossible for the court to determine whether counsel have spent a reasonable amount of time on tasks that are otherwise compensable.

After carefully reviewing each of the specific entries challenged by defendants, the court believes a general reduction in hours is appropriate to account for the difficulty caused by counsel's block billing. The court will disallow 30 percent of the hours identified as block-billed. *See Fralick v. Plumbers and Pipefitters Nat. Pension Fund*, 2011 WL 487754, at *11 (N.D. Tex. 2011) (noting that courts that have applied percentage reductions to block-billing have typically applied a range of 10 to 30 percent). Thus, the court will disallow 4.7 hours of Mr. Horn's time; 22.7 hours of Ms. Breneman's time; 40.2 hours of Ms. Dungan's time; 9.4 hours of Mr. Kronawitter's time; and 9.1 hours of associate time to compensate for counsel's block billing.

Certain entries within the July 21, 2009 through September 20, 2009 time frame do not necessarily relate to the pursuit of claims against the full-line stores. Most notably, counsel spent a significant number of hours (both during this time period and prior to this time period) working on a response to defendants' motion for judgment on the pleadings and, more specifically, defendants' argument that plaintiffs needed to identify the specific state wage and hour statutes upon which their state law claims were based. Indeed, plaintiffs did not identify any specific state statutes until the filing of their second amended complaint on September 3, 2009. Counsel's billing records reflect 3.0 hours spent by Mr. Horn; 7.1 hours spent by Mr. Kronawitter; 21.8 hours spent by an associate; and 5.9 hours spent by a paralegal relating to the motion for judgment on the pleadings. Other entries reflect time spent on researching the state

wage payment laws of all fifty states (including California, which is expressly outside the scope of the settlement). The billing records reflect 6.5 hours spent on such research by Ms. Breneman and 9 hours spent by an associate. Defendants contend that these hours should be reduced substantially because the time spent is excessive and, in the end, the numerous state statutes ultimately identified by plaintiffs did not relate to the settlement in any way or benefit plaintiffs in any way. The court agrees that the amount of time spent responding to the motion for judgment on the pleadings is excessive in that plaintiffs' counsel and staff spent nearly 40 hours on a response that in substance is 11 pages. Moreover, with the exception of the 5 specific statutes that entitle plaintiffs to fees in this case, the specific statutes ultimately researched and identified by counsel seem to have had no bearing on the settlement of this case or the fees ultimately awarded to plaintiffs. The court, then, will permit the recovery of 2 hours of Mr. Kronawitter's time spent on the motion; 10 hours of associate time on the motion; and 4.5 hours of associate time spent on researching the specific state statutes identified in the second amended complaint.

Defendants also challenge certain time entries as duplicative in that more than one of plaintiffs' lawyers charged for the same activity, such as participation in a conference call with Sears' in-house counsel and attendance at the mediation.[12] Plaintiffs respond that defendants often had more than one attorney at the mediation because both firms were required to attend and

_____

[12]While defendants challenge many more entries as duplicative, the vast majority of those entries fall within the July 2009 through September 2009 time frame which the court has already disallowed in large part.

that the handful of calls identified by defendants were significant enough to warrant participation by two attorneys. The court believes that time spent at the mediation by one lawyer from each firm is properly compensable in light of the significance of the mediation in the context of this case. *See Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1105 (10th Cir. 2010) (no abuse of discretion when district court awarded fees for participation by two plaintiffs' lawyers at settlement conference in light of significance of conference). The court, then, will deduct 8 hours from Mr. Kronawitter's time but will permit the 8.5 hours charged by Ms. Dungan and the 8 hours charged by Mr. Horn for time spent at the mediation. Similarly, the court will permit the entries (both of which are facially reasonable) from both Ms. Breneman and Mr. Kronawitter for the conference call.

Finally,[13] defendants challenge numerous entries by paralegals on the grounds that time spent by paralegals performing clerical or secretarial tasks is not compensable; rather, paralegal time is compensable only when the paralegal is performing tasks that would otherwise be performed by a lawyer. By way of example, defendants challenge paralegal entries with descriptions of tasks such as organizing files and documents; Bates-stamping documents; updating file indexes; and calendaring motion deadlines. In response, plaintiffs simply urge that such time is compensable and are "regular paralegal duties." Plaintiffs have not shown that these tasks justified the efforts of a paralegal "as opposed to an employee at the next rung lower on

---

[13]To the extent defendants have made a specific challenge to any specific entry that the court has not expressly addressed, counsel is assured that the court considered those challenges but ultimately did not agree with those challenges.

the pay-scale ladder." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999). After reviewing the specific entries challenged by defendants (and not otherwise disallowed as falling within the July 2009 through September 2009 time frame), the court concludes that a reduction of an additional 10 hours of paralegal time is appropriate.

B.      *Reasonable Hourly Rate*

To complete the lodestar calculation, the court now determines a reasonable hourly rate. *See Ellis v. University of Kansas Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998). A reasonable rate "is the prevailing market rate in the relevant community." *Id*. (quoting *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984))).[14] The relevant market rate is the "price that is customarily paid in the community for services like those involved in the case at hand." *Id.* (quoting *Beard v. Teska*, 31 F.3d 942, 956 (10th Cir. 1994)). Thus, plaintiffs bear the burden of showing that the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *See id.* (quoting *Malloy*, 73 F.3d at 1018) (quoting *Blum*, 465 U.S. at 895 n.11)).

Plaintiffs request an hourly rate of $495 for Mr. Horn; an hourly rate of $415 for both Ms. Breneman and Ms. Dungan; an hourly rate of $325 for Mr. Kronawitter; an hourly rate of $200 for both associates who worked on the case; and an hourly rate of $90 for paralegal work on the

_____

[14]The relevant community here is the Kansas City metropolitan area.

case.  In support of plaintiffs' request, they have submitted the affidavits of Mr. Horn and Mr. Kronawitter who detail their backgrounds, qualifications and experience as well as a separate affidavit from Mr. Horn in which he avers simply that the rates requested for his firm "reflect our customary hourly rates for litigation of this nature" and that the rates "are representative of rates charged by similarly-situated counsel in class action litigation in this area."  Neither Ms. Breneman nor Ms. Dungan have submitted an affidavit concerning their background, qualifications or experience.  Rather, plaintiffs have submitted a copy of a page from the firm's website, kclitigators.com, that offers summaries of Ms. Breneman's and Ms. Dungan's relevant background and experience.  Ms. Breneman has also submitted an affidavit that mirrors Mr. Horn's affidavit in that she avers that the rates requested for her firm "reflect our customary hourly rates for litigation of this nature" and that the rates "are representative of rates charged by similarly-situated counsel in class action litigation in this area."  There is no evidence as to the background, experience or qualifications of the associates who worked on the case.

In addition, plaintiffs have submitted the affidavit of Thomas Bender, a Kansas City lawyer who specializes in complex litigation including class action litigation.  Mr. Bender avers that he believes that the rates submitted by counsel in this case are consistent with prevailing rates for class action litigation in the Kansas City area.  He further avers that "rates charged locally are generally" in the following ranges: $400 to $600 for "experienced, veteran trial counsel"; $250 to $400 for "mid-level experienced attorneys"; and $150 to $250 for "lesser experienced" attorneys.  Mr. Bender does not purport to have any knowledge of the experience or reputation of any of the plaintiffs' lawyers in this case.

In response, defendants contend that the suggested rates are "disproportionately high" compared to rates typically charged in "labor and employment" cases in this area. Defendant suggests that an hourly rate of $175 to $300 is more appropriate depending on the respective attorney's years of experience. The cases relied upon by defendants, however, are not particularly helpful because they are out-of-date in terms of prevailing rates; involved counsel who requested a lower hourly rate than requested here (necessarily resulting in the award of a lower hourly rate); or involved single-plaintiff litigation. But the cases relied upon by plaintiffs are similarly unhelpful. Plaintiffs assert that the rates requested by Mr. Horn and Mr. Kronawitter "were just approved" by a United States District Judge in the Western District of Missouri. Plaintiffs overstate that court's order. Fees in that case were not disputed by the opposing party and a lump sum fee award was agreed upon in connection with the settlement–a settlement that was ultimately approved by the court. Similarly, plaintiffs direct the court to two older cases from the Western District of Missouri where counsel allegedly "requested and received" a fee award reflecting "a much higher hourly rate than the rates requested" here. Those cases, unlike the situation here, involved "consent motions" for fees in which the parties had settled their dispute and, within the settlement, agreed to a lump sum fee award that was ultimately approved by those courts. Finally, plaintiffs contend that Judge Vratil in this district recently approved an hourly rate of $590.91 in a federal wage and hour case. *See Bruner v. Sprint/United Management Co.*, 2009 WL 2058762 (D. Kan. July 14, 2009). Judge Vratil, however, did not conclude that $590.91 was a reasonable hourly rate under a lodestar analysis in the context of a fee-shifting statute. Rather, the *Bruner* case involved a "common fund"

settlement" and plaintiffs sought fees as a percentage of the fund. The fee request was unopposed. While Judge Vratil rejected the percentage of the fund approach as specifically structured by the parties (which translated to an hourly rate of $1487.54) and she ultimately utilized an hourly rate of $590.91 to calculate a fee award, she did not conclude that such an hourly rate would be reasonable in a contested fee-shifting context under a lodestar analysis.

Plaintiffs request an hourly rate of $495 for Mr. Horn. Mr. Horn avers that he has practiced law for more than thirty years and that he has tried more than 40 cases to conclusion to a jury. Mr. Horn's affidavit reflects that he has significant experience in class action litigation. To be sure, Mr. Horn falls within the range of rates for "experienced, veteran trial counsel" identified by Mr. Bender. Nonetheless, the court sets Mr. Horn's hourly rate at the low end of that range because the evidence before the court (while it does demonstrate that Mr. Horn handled at least one other class action lawsuit asserting claims concerning unpaid sales commissions) does not reflect that Mr. Horn has any particular expertise in employment-related matters, which may explain at least in part the difficulties Mr. Horn has had pursuing plaintiffs' fee application and, more specifically, his apparent failure to think through how plaintiffs' counsel would recoup their fees. The court, then, concludes that an hourly rate of $400 is reasonable for the work performed by Mr. Horn. *See University of Kansas v. Sinks*, 2009 WL 3191707, at *12 (D. Kan. Sept. 28, 2009) (concluding that $330 was reasonable hourly rate for partner at firm who specialized in trademark litigation and had been in practice for 16 to 18 years).

It is more difficult to determine a reasonable hourly rate for Ms. Breneman and Ms.

Dungan because the record contains less evidence of their pertinent experience and the court is less familiar with Ms. Breneman and Ms. Dungan. With respect to Ms. Breneman, her firm's website suggests that she has approximately 20 years of litigation experience (with an emphasis in products liability litigation) but that any particular experience in class action litigation is somewhat recent. Ms. Breneman's biography does not mention any background or experience with employment-related matters in general or wage and hour matters in particular. While the summary pertaining to Ms. Dungan states that she graduated in 1987, suggesting almost 25 years of experience, it does not mention class action experience in any respect and suggests that some portion of that time was spent serving as in-house counsel for a national title insurance company which, in the court's mind, would not be equivalent (for purposes of establishing an hourly rate) to time spent by an attorney who litigates outside the corporate context. Ms. Dungan's biography also indicates a particular emphasis in products liability work and is silent as to whether Ms. Dungan has any background or experience with employment-related matters in general or wage and hour matters in particular. Indeed, the fact that Ms. Breneman and Ms. Dungan (the initial client contacts) approached Mr. Horn for assistance in pursuing plaintiffs' claims supports the conclusion that neither Ms. Breneman nor Ms. Dungan are comfortable litigating class action employment-related claims.

Based on the record before it, the court is unable to conclude that Ms. Breneman and Ms. Dungan qualify, for purposes of this particular class action and in the context of a fee request, as "experienced, veteran trial counsel" whom Mr. Bender avers are entitled to a fee in the range of $400 to $600 per hour. In light of the fact that the record is devoid of evidence of Ms.

Breneman's and Ms. Dungan's experience (let alone expertise) in employment-related matters and is vague as to the nature and extent of their class action experience, the court concludes that an hourly rate of $290 is appropriate for Ms. Breneman and Ms. Dungan and is supported by both the court's knowledge of prevailing rates in the community and Mr. Bender's affidavit concerning the same. *See Braun v. Superior Indus. Int'l, Inc*., 2010 WL 3998034, at *2 (D. Kan. Oct. 4, 2010) (approving hourly rate of $320 for shareholder at firm with 17 years' experience in employment-related matters).

Plaintiffs seek an hourly rate of $325 for work performed by Mr. Kronawitter. The evidence reflects that Mr. Kronawitter is a partner with Mr. Horn's firm and that he has been practicing law for approximately 11 years. His affidavit supports the conclusion that Mr. Kronawitter has experience representing plaintiffs in class action cases, particularly pursuing various claims against insurance companies. Mr. Kronawitter's affidavit does not reflect, aside from this case, any particular experience in employment-related matters in general or wage and hour issues in particular. While Mr. Kronawitter's hourly rate should certainly fall within the range identified by Mr. Bender for "mid-level experienced attorneys," the court believes a reduction in the specific rate requested for Mr. Kronawitter is appropriate in light of his apparent lack of experience in employment-related matters. The court will allow an hourly rate of $270 for the work performed by Mr. Kronawitter. *See Braun v. Superior Indus. Int'l, Inc*., 2010 WL 3998034, at *2 (D. Kan. Oct. 4, 2010) (setting hourly rate of $225.00 for eighth-year associate "well experienced in FLSA matters").

With respect to the two associates who worked on the case (one associate from each

33

firm), there is no evidence whatsoever in the record concerning the years or quality of experience of these associates and the associates are not found on the firms' websites. The court must, then, assume that these associates fall at the low end of the range identified by Mr. Bender for "lesser experienced" attorneys and concludes that an hourly rate of $175 is appropriate for these individuals. *See Hayne v. Green Ford Sales, Inc.*, 2010 WL 2653410, at *6 (D. Kan. June 29, 2010) (concluding that $180 is reasonable hourly rate for the "less-experienced" associate attorneys who worked on case); *University of Kansas v. Sinks*, 2009 WL 3191707, at *12 (D. Kan. Sept. 28, 2009) (setting $150 as reasonable hourly rate for associates with 0-2 years' experience). Finally, defendants do not challenge the requested hourly rate of $90 for paralegal work and this rate accords with the court's knowledge of prevailing rates for paralegals in Kansas City. *See id.*

C.      *Calculation of the Lodestar*

Based on the reasonable hours and rates discussed above, the court concludes that the lodestar figure for this case is $73,052.50. This amount is calculated as follows.

The billing records submitted by Mr. Horn's firm reflect 396.10 hours for a total fee request of $102,520. That request is comprised of 68.70 hours by Mr. Horn at the $495.00 rate; 113.50 hours by Mr. Kronawitter at the $325.00 rate; 112.50 hours by an associate at the $200 rate; and 101.40 hours by a paralegal at the $90.00 rate. From the hours requested by Mr. Horn's firm, the court will deduct 42.4 hours from Mr. Horn's time (leaving 26.3 hours for Mr. Horn); will deduct 65.7 hours from Mr. Kronawitter's time (leaving 47.8 hours for Mr. Kronawitter);

will deduct 37.1 hours of associate time (leaving 75.4 hours for the associate); and will deduct 65.1 hours of paralegal time (leaving 36.3 hours of paralegal time). Multiplying those hours by the adjusted hourly rates deemed reasonable by the court in the context of this case, the lodestar figure with respect to the work performed by Mr. Horn's firm is $39,888.00.

The billing records submitted by Ms. Breneman and Ms. Dungan's firm reflect a total fee request of $139,652.[15] These request is comprised of 134.1 hours by Ms. Breneman at the $415 rate; 178.7 hours by Ms. Dungan at the $415 rate; and 49.2 hours by an associate at the $200 rate. From the hours requested by Ms. Breneman and Ms. Dungan's firm, the court will deduct 122.5 hours from Ms. Breneman's time (leaving 11.6 hours by Ms. Breneman); will deduct 86.5 hours from Ms. Dungan's time (leaving 92.2 hours for Ms. Dungan); and will deduct 31.7 from the associate's time (leaving 17.5 hours of associate time). Multiplying those hours by the adjusted hourly rates deemed reasonable by the court in the context of this case, the lodestar figure with respect to the work performed by Ms. Breneman and Ms. Dungan's firm is $33,164.50.

D.      *Reduction of the Lodestar*

Having determined the lodestar amount, the court now considers whether any adjustment

---

[15]The billing records of Ms. Breneman and Ms. Dungan's firm were somewhat complicated by the fact that counsel entered a "no charge" for certain tasks but did not remove the hours for those tasks in their calculation such that their ultimate fee request actually reflected hours (but not fees) for which they were not seeking compensation. For ease of its own lodestar calculation, the court has deleted the hours that corresponded to the "no charge" entries made by counsel.

to that amount is necessary.  *See Hensley*, 461 U.S. at 435.  According to defendant, a general reduction of any remaining time is necessary because plaintiffs' fee request is utterly disproportionate to the actual recovery plaintiffs obtained.  While the court indeed expressed concern at the hearing on the motion about the size of the fee request as compared to the total recovery obtained in this case, those concerns no longer exist in light of the specific reductions already made by the court, particularly with respect to hours spent pursuing claims against the full-line stores–hours which represented the bulk of plaintiffs' fee request.  In other words, the court believes that these reductions sufficiently account for any initial proportionality concerns such that the lodestar calculated above represents a reasonable amount of fees.  Moreover, while the court would certainly be concerned about awarding a $73,000 fee award in a single-plaintiff case where the plaintiff recovered less than $100.00 (as many of the claimants did here), plaintiffs' counsel, of course, obtained an aggregate recovery of $36,000 based on their efforts on behalf of all the individuals in the class and that is the appropriate comparison.  No further reductions, then, are warranted in this case.


IV.    **Costs and Expenses**

Plaintiff also seeks as part of her fee request $20,177.69 for costs and expenses incurred. Defendants contend that $17,861.96 of plaintiffs' total expenses should be disallowed as nonrecoverable costs and expenses.  Specifically, defendants challenge plaintiffs' claim for

transcript costs, travel expenses and Westlaw charges.[16]  As will be explained, the court awards

plaintiffs costs and expenses in the amount of $8221.97.[17]

A.      *Depositions*

Plaintiffs claim $10,744.21 in costs associated with the depositions of Sears' four

designated corporate representatives, the four named plaintiffs and Barb Waite.  The court may

tax as costs "[f]ees of the court reporter for all or any part of the stenographic transcript

necessarily obtained for use in the case." 28 U.S.C. § 1920(2). "The costs of taking and

transcribing depositions reasonably necessary for litigation are generally awarded to the

prevailing party under 28 U.S.C. § 1920." *Callicrate v. Farmland Indus., Inc*., 139 F.3d 1336,

1339 (10th Cir. 1998).  The court declines to award any costs associated with the depositions of

the corporate representatives as plaintiffs have not shown that these transcripts were necessarily

obtained for use in the case.  Indeed, there is no evidence in the record indicating that the

depositions of these individuals were focused on plaintiffs' claims against Sears' outlet stores

and, because these depositions occurred during the time frame when plaintiffs were vigorously

---

[16]As a threshold matter, defendants contend that plaintiffs have not identified a sufficient legal basis to recover their costs and expenses.  The court disagrees.  A prevailing party is entitled to costs under § 1920 (including transcript costs) and, as explained earlier in this opinion, plaintiffs in this case obtained a judgment for wages due.  Moreover, as explained in the text, travel expenses and Westlaw charges are not "costs" but are part of the fee award itself.

[17]Of this total amount, $4401.79 is attributed to Mr. Horn's firm and $3820.18 is attributed to Ms. Breneman and Ms. Dungan's firm.

pursuing their claims against Sears' full-line stores, the court concludes that these depositions primarily concerned plaintiffs' claims against the full-line stores. The court, then, will deduct $4690.26 from the amount requested by plaintiffs.

With respect to the depositions of the named plaintiffs, the court concludes that the costs of one transcript (and, where applicable, a videotape) of each deposition are appropriately taxed as costs.[18] The court, then, will tax as costs the amount of $4015.30 associated with the depositions of the named plaintiffs.[19] Moreover, because it is undisputed that the deposition of Ms. Waite was critical to the advancement and resolution of plaintiffs' claims against the outlet stores, the court will tax as costs the amount associated with the deposition of Ms. Waite–$1410.04.

C.    *Westlaw Charges*

Plaintiffs claim $3267.57 in expenses for Westlaw research. Defendant contends that the court should disallow the entire amount as courts typically do not tax costs not specifically listed in 28 U.S.C. § 1920. In light of plaintiffs' citation to the Tenth Circuit's opinion in *Case v. Unified School District No. 233*, 157 F.3d 1243, 1258 (10th Cir. 1998), it appears that plaintiffs

---

[18]Unlike the court's analysis in the fee context where it permitted counsel's time only with respect to the deposition of one plaintiff, the analysis under § 1920 is whether the transcripts were necessarily obtained for use in the case. Outside the fee context, then, and in the context of the lawsuit as a whole, the court concludes that the transcripts of the four named plaintiffs were necessarily obtained for use in the case.

[19]Mr. Horn's submissions inadvertently reflect a double charge for the deposition of Mr. Burrows. The court will deduct the duplicative charge.

are seeking to recover these expenses not as costs under 28 U.S.C. § 1920 but as part of their attorneys' fee award. In *Case*, the Tenth Circuit stated, in the context of a civil rights case, that reasonable expenses, including Westlaw expenses, incurred in representing a client "should be included in the attorney's fee award if such expenses are usually billed in addition to the attorney's hourly rate." *Id*. at 1257. Under the circumstances presented here, the court will not shift these expenses to defendant.

To begin, plaintiffs have proffered no evidence that such expenses are normally billed to the client instead of, as suggested by defendant, absorbed by the firm's overhead. *See Degrado v. Jefferson Pilot Fin. Ins. Co.*, 2009 WL 1973501, at *12 (D. Colo. July 6, 2009) (declining to award Westlaw expenses where plaintiff did not show that such expenses are normally billed to client). Moreover, plaintiffs have made no effort whatsoever to itemize their Westlaw charges by subject. Rather, plaintiffs' counsel have submitted only monthly (and sometimes only quarterly) Westlaw charges. The court, then, can not readily ascertain what charges apply to issues properly focused on the outlet claims as opposed to claims concerning the full-line stores. *See Case*, 157 F.3d at 1258 (one-half reduction in Westlaw expenses appropriate where district court was not able to separate research related to prevailing claims from research related to other claims). Finally, even assuming plaintiffs could show what amount of Westlaw research was targeted to the outlet claims, the billing records (as described above in connection with the discussion of a reasonable fee) reflect that plaintiffs' counsel spent time conducting "basic research" to familiarize themselves with an area of law in which they apparently lacked expertise. These research expenses are not properly shifted to defendant. Other research was

simply excessive in light of the return realized on the research, such as time spent researching the state wage and hour laws of all 50 states.

For the foregoing reasons, the court declines to award plaintiffs' their Westlaw expenses.

C.    *Travel Expenses*

Plaintiffs claim $3850.18 in travel expenses, including airfare, parking fees and taxi fares. This request, in large part, is denied. According to plaintiffs, these expenses were incurred in connection with travel to and from Chicago for the depositions of Sears' corporate representatives and Barb Waite.[20] There is no evidence from which the court could conclude that the depositions of the corporate representatives were focused on the outlet side of this case and, because those depositions occurred during the time frame when plaintiffs were vigorously (if not exclusively) pursuing their claims against Sears' full-line stores, the court concludes that these depositions primarily concerned plaintiffs' claims against the full-line stores. The travel expenses associated with the depositions, then, are not recoverable. On the other hand, the deposition of Barb Waite was undisputedly critical to the resolution of the outlet claims and the court will award plaintiffs their reasonable expenses incurred in connection with this deposition.

Plaintiffs' submissions indicate that both Mr. Horn and Mr. Kronawitter traveled to

---

[20]Plaintiffs' submissions include a request for travel expenses for Mr. Lockhart, a named plaintiff, to return to Kansas City for his deposition. Plaintiffs have apparently abandoned this request. The court would have denied this expense in any event because plaintiffs are seeking their travel expenses as part of their fee award and Mr. Lockhart, who does not reside in any of the states that authorize a fee award in this case, is not entitled to a fee award.

Chicago for Ms. Waite's deposition. In the absence of any argument that the attendance of both attorneys was necessary, the court will award expenses for airfare, taxi fare and parking fees for one attorney, in the amount of $491.60.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion and supplemental motion for attorneys' fees, costs and expenses (docs. 127; 145; 149) are **granted in part, denied in part and retained under advisement in part**. The court awards $73,052.50 in fees and $8221.97 in costs and expenses. Plaintiffs are directed to show good cause to the court on or before Friday, April 1, 2011 why plaintiffs' counsel should not retain from the fee award an amount equal to 33% of the sum of the fee award and the underlying recovery in this case; why the remainder of the fee award should not be distributed on a pro rata basis directly to those class members entitled to a fee; why notice should not be reissued to those class members who are entitled to a fee award in this case; and why plaintiffs' counsel should not bear the cost of that notice. Defendants shall file any response no later than Friday, April 8, 2011.

**IT IS SO ORDERED.**

Dated this 11th day of March, 2011, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

41